McKinney, J.
delivered the opinion of the court.
This was an action on the case brought in the circuit court of Smith, by the defendant against the plaintiffs [in error, to recover damages for the conversion of a slave named Jesse, the property of the former.
The declaration contains a count in trover, and several counts in case.
The jury found for the plaintiff below, and assessed his damages, by reason of the conversion of said slave, to six hundred and ninety three dollars.. The court refused to grant a new trial, and the defendants prosecuted an appeal in error to this court.
The proof in the record shows, that on the 4th day of January 1847, the plaintiffs in error hired from the defendant *243 two slaves, Jesse and John, by a contract in writing, which stipulates in express terms, that the service in which said slaves were to be employed was, “ to cut cord-wood on the 1 Mississippi river, at or near Mills’ Point, and for no other pur-' pose.”
The proof further shows, that in the month cf April 1847, during a flood in the Mississippi river, the slave Jesse together with several others in the employ of the plaintiffs in er- \ ror, was put to assist in the removal of cord-wood, in a boat and on rafts, from an island in said river to the bank, to prevent its being carried off by the flood. And while thus employed, the slave Jesse was drowned, in the effort to rescue another slave who could not swim.
During the progress of the trial, the defendants in the court below proposed to prove, “that it was the custom, and considered part of the business of hands employed in cutting cord-wood (on the Mississippi river) to save the wood by taking it to the highlands, when necessary, in boats.” This evidence being objected to, was excluded by the court.
The defendants also proposed to prove, by a witness who was present at the time the written contract between the parties was presented to the defendants for their signature, “that the defendants then objected to signing it, alledging that its language was too strong; and that plaintiff then said, that he only meant by these expressions — cutting cord-wood, and for no other purpose — that they should not hire them (the negroes) out on steamboats, or put them under their control, or any one else, than the defendants.” This evidence was likewise objected to, and was excluded from the jury.
His Honor, the circuit judge, among other things not material to be here noticed, instructed the jury that, “if the contract of hiring limited the service of the slave to a particular business or occupation, then the hirer could not employ the slave at any other business; and if he did so, it would be *244 a conversion of the property, and he would be liable to the owner for the value of the property converted. The contract between the parties in this case is in writing; and there being no ambiguity in its terms, parol evidence cannot be admitted to explain, alter, or modify, the terms of that contract. If the contract between the parties was, that the negro Jesse should be employed by the defendants in cutting cord-wood, and for no other purpose, these terms show that the service of the slave was to be confined to that business alone, and any acts necessary and incidental to cutting cord-wood, such as cutting, splitting, handling and piling the wood, would be embraced by the terms. But an employment upon the water, in rafting or transporting the wood in a boat from one place to another, would not be an employmexrt consistent with the terms of the contract. And if the slave Jesse was employed by the defendants in transporting wood from one place to another, in a boat, upon the Mississippi river, and he was thereby drowned, such employment would be a conversion by the defendants, and they would be liable to the plaintiff for the value of the slave.”
Several errors have been assigned and urged in argument by the counsel for the plaintiffs in error.
1. It is argued that the court erred in excluding the conversation between the parties, previous to the execution of the contract, as to the meaning of the words “cutting cord-wood, and for no other purpose:”
We do not think so. The rule is well settled, that when a contract has been reduced into writing, in plain and unambiguous terms, without any uncertainty as to the object or undertaking of the parties, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was embraced in such written contract. And in such case, in the languge of Lord Denman (5, B. & A. 64,) “verbal evidence is not allowed to be given of what *245 passed between the parties, either before the written instrument was made, or during the time it was in a state of preparation, so as to add to, or subtract from, or in any manner to vary or qualify the written contract.” The meaning and intention of the parties, in all such cases, must be ascertained and declared by the court from what is written in the instrument; and no extrinsic evidence of the intention of the parties from their declarations or conversations, whether at the time of executing the instrument, or before, or after that time, is admissible.
2. It is insisted that the court erred in excluding evidence of the usage or custom of wood cutters on the Mississippi river. We think otherwise. It is certainly true, that in many cases evidence of usage or custom Is admissible, in aid of the construction of written instruments. And the admission of such evidence, in the cases referred to, is no infringement of the rule which forbids the admission of parol evidence .to vary or contradict a written instrument. For, if the words of the contract manifest nothing to the contrary, the parties may be presumed to refer to such usage, just as they are presumed to refer to the lex loci, or to employ words in their usual and ordinary signification. Proof of usage is admitted either to interpret the meaning of the language of the contract, or to ascertain the nature and extent of the contract, in the absence of express stipulations, and where the meaning is equivocal and obscure; 1 Greenleaf’s Ev. sec. 292. The evidence in such cases is admitted, with the view of giving effect, as far as can be done, to the presumed intention of the parties. But where the language of the contract itself manifests an intention to exclude the operation of usage, evidence of usage cannot be admitted. And in all cases in which this evidence is admitted, it must be presumed that the usage -was known to the contracting parties, and that they contracted in reference *246 to it, and in conformity with it; 2 Phillips’ Ev. 243, (Ed. of 1849.)
The rule for admitting evidence of usage must be taken always with this qualification, that the evidence proposed is not repugnant to, or inconsistent with the contract. It ought never to he allowed to vary or contradict the written instrument, either expressly or by implication. Id. 244.
In the present case, the express stipulation in the contract, restricting the service of the slave to cutting cord-wood alone, and excluding all other kinds of service, manifests the intention of the parties, in the language of the foregoing authority, to exclude the operation of usage; and such evidence would be repugnant to, and inconsistent with the written contract. It was therefore properly rejected.
3. In the instructions of the court to the jury, there is no error. The principles of law announced, have been repeatedly sanctioned by this court. The construction and interpretation of a written instrument, if complete and intelligible in itself, is matter of law for the court. The words are to be understood in their ordinary and popular sense, unless, in respect to the subject matter, they have acquired generally a peculiar sense, distinct from their popular sense and meaning, as by the known usage of trade, or otherwise; or unless from the context it be necessary, in the particular case, in order to give effect to the manifest intention of the parties, that they should be understood in a different or peculiar sense. 1 Greenleaf, sec. 278.
The words of the contract, “to cut cord-wood,” taken alone and unaided by the negative words immediately following^ would not include, or authorize the employment of the slave in boating or rafting wood from an island in the river, under any circumstances; unless it appeared that such was the known usage, and that the parties contracted in reference to it. But the express negative words of the contract, prohibit *247 ing every other service, and excluding all usage, the more fully warrant the construction upon the contract by the circuit judge.
The principle stated in the charge, that if a hired slave be employed in a service different from that to which, by the contract of hiring, he was to be put, it is a conversion, has not, and cannot be controverted: motives of policy as well as of humanity, urgently require that the law should be so held.
Let the judgment be affirmed.